IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YVONNE R. ALSTON  :

      v.  :  Civil Action No. DKC 12-2711

CENTRAL CREDIT SERVICES, INC.  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the analogous Maryland Consumer Credit Reporting Agencies Act ("MCCRAA"), Md.Code.Ann., Com. Law § 14-1201, *et seq.*, and the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, is a motion for summary judgment filed by Defendant Central Credit Services, Inc. ("CCS" or "Defendant"). (ECF. No. 13). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant Defendant's motion for summary judgment.[1]

---

[1] On December 7, 2012, Plaintiff moved to strike the portion of Defendant's reply memorandum which referenced a prior Order from this court. (*See* ECF. No. 11, Order vacating Orders granting leave to proceed *in forma pauperis*). Plaintiff's motion to strike does not seek to strike any portion of a pleading; rather, it aims to strike a portion of a memorandum submitted by Defendant in response to Plaintiff's opposition to Defendant's motion for summary judgment. *See* Fed.R.Civ.P. 7(a). Because there is "no basis in the Federal Rules" for striking

**I. Background**

   **A. Factual Background**

The underlying facts of this case are undisputed. On April 4, 2011, RBS Card Services ("RBS") referred Yvonne Alston's ("Plaintiff") account for collection to CCS. (ECF. No. 13-2 ¶¶ 2,3). When RBS placed the account with CCS, it represented that the account was in default and that Plaintiff owed $15,653.77. (*Id.* ¶ 3). After RBS referred Plaintiff's account to CCS for collection, CCS reviewed the information pertaining to Plaintiff's debt and believed it was accurate. (*Id.* ¶¶ 3,5). On July 22, 2011, CCS obtained Plaintiff's credit report from Experian, a credit reporting agency, to assist CCS with collection efforts. (*Id.* ¶ 6). CCS then sent a collection letter to Plaintiff on July 25, 2011. (ECF. No. 13-2 ¶ 7). Plaintiff responded with a letter dated August 7, 2011, disputing the validity of the debt to RBS and CCS's authority to collect it, and requesting that CCS cease its collection attempts. (ECF. No. 13-3). CCS received Plaintiff's letter on August 16, 2011. (*Id.*). CCS terminated its collection efforts after it received Plaintiff's letter. (ECF. No. 13-2 ¶ 9).

---

such memoranda, *Tepeyac v. Montgomery Cnty.*, 779 F.Supp.2d 456, 460 (D.Md. 2011), Plaintiff's motion to strike is denied.

**B. Procedural Background**

On September 11, 2012, Plaintiff commenced this action, proceeding *pro se*, in the District Court of Maryland for Prince George's County. (ECF No. 2). Plaintiff asserted claims against CCS for violations of the FCRA, the CCRAA, and the FDCPA resulting from CCS's accessing her credit report from Experian.[2] (*Id.*). Defendant removed the action to this court on September 10, 2012, citing federal question as the jurisdictional basis. On September 13, 2012, the court issued a Scheduling Order, which established January 28, 2013 as the deadline for completing discovery. (ECF No. 10). Defendant moved for summary judgment on October 22, 2012. (ECF. No. 13). Plaintiff opposed the motion on November 8, 2013, (ECF. No. 15) and Defendant replied on November 26, 2012. (ECF. No. 16).

**II. Analysis**

**A. Standard of Review**

Summary judgment may be entered only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex*

---

[2] Plaintiff asserts that Defendant's pull of her credit report was a "'hard' pull that reduced [her] credit score." (ECF. No. 2 ¶ 9). A "hard pull" is a full credit inquiry conducted when someone applies for a loan or line of credit. *See Harkins, Jr. v. Diversified Collection Services, Inc.*, 2012 WL 5928997, at *1 n. 1 (D.Md. Nov. 26, 2012). It has been said that each hard pull can result in the reduction of a credit score by up to five points. *Id*.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." Anderson *v. Liberty Lobby, Inc.*, 477 U.S. 242, 250(1986); *JKC Holding Co.LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the facts that are presented must be construed in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## B. FCRA and MCCRAA Claims (Counts I and II)[3]

Congress enacted the FCRA "to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007). The FCRA creates a private right of action allowing injured consumers to recover "any actual damages" caused by negligent violations and both actual and punitive damages for willful noncompliance. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009); see *also* 15 U.S.C. §§ 1681n, 1681o.

The FCRA imposes duties on "furnishers of information" to credit reporting agencies. 15 U.S.C. § 1681s-2. Section 1681b(a) establishes permissible purposes for furnishing a consumer report. On its face, Section 1681b(a) appears to apply only to those furnishing reports, but the Fourth Circuit has concluded that users of the reports must also comply with the statutory provision. *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (stating that users are "subject to civil liability . . . if [the user's] non-compliance with section 1681b was willful"); *see also Korotki v. Attorney Servs. Corp.*, 931 F.Supp. 1269, 1276

---

[3] Because the MCCRAA contains virtually identical provisions to the FCRA, the Fourth Circuit has addressed separate claims brought under both the MCCRAA and FCRA as one. *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899-900 (4th Cir. 2003).

5

(D.Md.1996) (stating users could only obtain a consumer report "if they had a permissible purpose").

Section 1681b(a)(3)(A) provides that there is a permissible purpose to furnish a report to a person if the consumer reporting agency has a "reason to believe" that the user "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." This "reason to believe" standard has likewise been applied to users of the reports. *Korotki*, 931 F.Supp. at 1276; *see also Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F.Supp. 1263, 1278 (D.Md. 1992) (finding user had a permissible purpose to access credit report where user believed, but did not "know," whether consumer had misappropriated money). As applied to a user, this means that if a user had a reason to believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit report. *See* 15 U.S.C. § 1681b(a)(3)(A); *Korotki*, 931 F.Supp. at 1277.

Here, CCS has produced evidence of a permissible purpose in accessing Plaintiff's credit report – to collect a debt that it had "reason to believe" Plaintiff owed to RBS. (ECF. No. 13-2 ¶ 3). Plaintiff avers that "CCS falsely represented that Ms. Alston had a debt with RBS Card Services in the amount of

$15,656.37 and that CCS had authority to collect the debt." (ECF. No. 2 ¶ 10). The undisputed facts, however, indicate that CCS pulled Plaintiff's credit report in furtherance of collecting on a debt that CCS believed Plaintiff owed, which is a valid purpose under Section 1681b(a)(3)(A). (ECF. No. 13-3 ¶ 6). Specifically, Defendant submitted an affidavit from CCS's Executive Vice President, confirming that RBS placed Plaintiff's account with CCS for collection on April 4, 2011 and that "[a]t the time of the placement of the Account, it was represented that the Account was in default and that a balance of $15,656.37 was valid, due and owing by Plaintiff." (*Id.* ¶ 3).[4]

CCS's account notes further support this point. A February 17, 2012 entry in Plaintiff's account provides the following: "CLIENT GVG AUTH TO CCS TO COLLECT/ SEE SCAN." (ECF. No. 13-3). CCS further provides that after RBS placed Plaintiff's account with CCS, CCS reviewed the information provided and believed it

---

[4] Plaintiff asserts that "Defendant's self-serving affidavit does not establish that CCS had an agreement with RBS," and thus had a permissible purpose to pull Plaintiff's credit history. (ECF. No. 15, at 2). Plaintiff further argues that Defendant's submission of an account history is "inadmissible as the affiant does not testify as to the person making the phone calls, to having supervised or observed or listened to the phone calls, to having reviewed the recorded phone calls, or to having inputting the notes." (*Id.* at 2-3). Plaintiff is incorrect. "[E]mployees who are familiar with record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute summary judgment evidence." *Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008); *see also* Fed.R.Evid. 803(6).

was accurate. (ECF. No. 13-2 ¶ 5). CCS alleges that it requested a copy of Plaintiff's credit report to pursue collection activities and that it "did not request Plaintiff's credit report for any other purposes." (*Id.* ¶ 6).

"The defendants, having produced evidence of a permissible purpose, are entitled to summary judgment unless plaintiff, who bears the burden of going forward to show lack of a proper purpose, produces some evidence upon which a jury could find to the contrary." *Korotki*, 931 F.Supp. at 1279. Plaintiff contests the debt to RBS, but offers no evidence to establish that CCS accessed her credit report in bad faith, or for reasons other than in an attempt to collect on a debt it had reason to believe Plaintiff owed. The validity of Plaintiff's indebtedness to RBS is immaterial to *Korotki's* "reason to believe" standard; by its own terms, "reason to believe" implies that there may be instances where a debt turns out not to be valid. CCS did not need ironclad proof of Plaintiff's debt to RBS to satisfy the permissible purpose requirement. Accordingly, summary judgment is appropriate on Plaintiff's FCRA and MCCRAA claims.

### C. FDCPA Claims (Count 3)[5]

Plaintiff also alleges that CCS violated various provisions of the FDCPA, which protects consumers from "abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004). Section 1692a(6) includes in the definition of debt collector "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." CCS is a "debt

---

[5] Section 1692k(d) of the FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, the alleged violations took place on July 22, 2011, more than one year before Plaintiff filed the complaint in the District Court of Maryland for Prince George's County on September 11, 2012. CCS did not plead the statute of limitations as an affirmative defense.

Ordinarily, a statute of limitations is treated as an affirmative defense that a party must raise; otherwise, it is deemed waived. Fed.R.Civ.P. 8(c)(1). Courts, however, are split on the issue of whether Section 1692k(d) is a statute of limitations or a jurisdictional prerequisite and thus not subject to waiver or tolling. *Compare Mattson v. U.S. West Commc'ns, Inc.,* 967 F.2d 259, 262 (8th Cir. 1992)(describing FDCPA's statute of limitations as a "jurisdictional statute"), *with Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939-40 (9th Cir. 2009) (holding that the FDCPA's statute of limitations is not jurisdictional); *Betskoff v. Enterprise Rent A Car Co. of Baltimore, LLC*, 2012 WL 32575, at *5 n.6 (D.Md. Jan. 4, 2012) (same). Although one might argue that Section 1692k(d) provides a jurisdictional prerequisite, neither the Fourth Circuit nor the Supreme Court has resolved the matter. Accordingly, the court declines to address the issue now.

collector" within the meaning of the FDCPA, but as a threshold matter, Plaintiff must also show that CCS used "prohibited practices . . . in an attempt to collect the debt." *Akalwadi*, 336 F.Supp.2d at 500. Plaintiff has not satisfied this threshold.

### 1. Section 1692e(2)(A)

Section 1692e(2)(A) states that a debt collector may not falsely represent "the character, amount, or legal status of any debt." The language of the statute does not require a plaintiff to establish that a defendant acted with intent to represent falsely or with knowledge of the falsehood. *See* 15 U.S.C. § 1692e(2)(A); *Spencer v. Hendersen-Webb, Inc.,* 81 F.Supp.2d 582, 592 (D.Md. 1999) ("The language of the [FDCPA] is clear: a debt collector's mistaken belief, . . . is not sufficient to preclude liability"). Pursuant to Section 1692k(c), however, liability may be avoided where a debt collector can establish a *bona fide* error defense. Specifically, Section 1692k(c) states that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Plaintiff contends that Defendant falsely represented that: (1) the Plaintiff had a debt with RBS Card Services; (2) the

Defendant had authority to collect a debt that Plaintiff owed; (3) the Plaintiff was in default on the debt; and (4) the Plaintiff owed $15,656.37. (ECF. No. 2 ¶ 23). Plaintiff maintains that she did not owe any debt to RBS. (*Id.* ¶ 11). Plaintiff further asserts for the first time in her opposition to Defendant's motion that, on August 30, 2011, *after* Plaintiff's account was referred to CCS, Plaintiff was "advised by RBS representative that [CCS] was not authorized to collect for RBS on [her] alleged debt." (ECF. No. 15-1 ¶ 4).

Assuming these assertions are true, CCS can still rely on the *bona fide* error defense. Debt collectors can rely in the first instance on information they obtain from creditors concerning a debt. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (holding that debt collectors do not have to "vouch for the validity of the underlying debts"); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) (noting that creditors' knowledge is not imputed to debt collectors). CCS received Plaintiff's account from RBS, the creditor, on April 4, 2011, and, at the time, "it was represented that the Account was in default and that a balance of $15,656.37 was valid, due and owing by Plaintiff." (ECF. No. 13-3 ¶ 3). Based on the record, CCS had no reason to know that Plaintiff may not owe the debt until Plaintiff disputed the debt in an August 7, 2011 letter to CCS. After Defendant received the letter on

August 16, 2011, it "made no further attempts to contact Plaintiff." (ECF. No. 13-2 ¶¶ 8-9).

In order to establish the *bona fide* error defense, a debt collector is not required to prove that it had procedures in place to guard against the unknown or *potential* errors of others – instead, the debt collector has to take prompt steps to correct any errors once it received notice, which Defendant plainly did here by ceasing all collection efforts after Plaintiff disputed the debt. *See In re Creditrust Corp.*, 283 B.R. 826, 832 (Bankr.D.Md. 2002). Importantly, Plaintiff does not contest this point. In contrast to *Akalwadi*, where, over plaintiff's multiple objections, the collection agency either refused to reinvestigate or reinvestigated and made a false determination, CCS ceased its collection efforts after Plaintiff contested the debt. *See Akalwadi*, 336 F.Supp.2d at 498-99. Plaintiff's account history further confirms August 16, 2011 as the last date of activity on the account. (ECF. No. 13-3).

Contrary to Plaintiff's arguments, CCS need not submit any agreements or contracts it had with RBS authorizing CCS to collect the debt in order to assert the *bona fide* error defense.[6]

---

[6] Plaintiff also states that she "has not had enough time to conduct her discovery and therefore moves this Court to deny the motion for summary judgment *or* defer considering it until Discovery has been completed." (ECF. No. 15, at 5) (emphasis added). Pursuant to the court's Scheduling Order, discovery ended on January 28, 2013. (ECF. No. 10). Furthermore, the

The FDCPA expressly provides procedures that a debt collector must take when a debtor disputes a debt. For example, Section 1692g(b) states that if a debt is disputed, the debt collector must "cease collection of the debt . . . until the debt collector obtains verification of the debt." Defendant did just that here. Notably, there is nothing in the statute stating that, where a debt is later found to be invalid, any initial collection efforts are *per se* violations of Section 1692e(2)(A). *See Ducrect v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (M.D.La. 1996) (noting the key issue is whether defendant has acted "unscrupulously in attempting to collect a debt," and not the actual validity of the debt). Accordingly, plaintiff has failed to provide any facts indicating actionable misconduct by CCS.

### 2. Section 1692e(10)

Section 1692e(10) states that a debt collector is prohibited from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To prove a claim under this

---

parties submitted a joint status report on January 28, 2013, and Defendant indicated that it "will be objecting to Plaintiff's discovery as untimely . . . but will provide substantive answers to relevant and not otherwise objectionable discovery." (ECF. No. 20, at 1). Plaintiff has not moved to reopen briefing. Based on the foregoing, Plaintiff's request that the court postpone adjudication on Defendant's motion for summary judgment pending completion of discovery is now moot.

provision of the FDCPA, Plaintiff must provide factual support bearing on CCS's purported misconduct. Plaintiff offers no support for her assertion that CCS made any false representations or used deceptive means in pulling her credit report. To the contrary, CCS accessed Plaintiff credit report on July 22, 2011, *after* Plaintiff's account was referred to CCS for collection on April 4, 2011, and upon belief that Plaintiff owed the debt and that the information concerning the account was accurate. Moreover, CCS ceased all collection efforts after Plaintiff disputed the debt to CCS. Accordingly, judgment will be entered in Defendant's favor on this Count too.

## III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted. Plaintiff's motion to strike will be denied. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
